# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

THE GARDENS OF FOREST LAKES
CONDOMINIUM ASSOCIATION,
INC., CINDY LENOK, JANET
SHERFEY, DAVID SHEILDS and
PATRICK MADDOX,

       Plaintiffs,

v.                                                                              Case No: 8:23-cv-2499-CEH-AAS

ASPEN SPECIALTY INSURANCE
COMPANY,

       Defendant.

_____

## <u>ORDER</u>

This matter comes before the Court on Defendant Aspen Specialty Insurance
Company's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 36), to which
Plaintiffs, the Gardens of Forest Lakes Condominium Association and the members
of its Board of Directors, have responded in opposition (Doc. 37).  Also before the
Court is Defendant's reply (Doc. 41), and a filing by Plaintiffs that the Court construes
as a sur-reply (Doc. 42).[1]

---

[1] Plaintiffs' sur-reply rests on the misconception that Defendant's reply was unauthorized,
which it was not. *See* Doc. 39 (granting Defendant's motion for leave to reply).  Plaintiffs
explained in a subsequent filing that they did not receive the motion for leave to reply until
weeks later, Doc. 43, although it was electronically filed on the Court docket and it contained
a certification that Defendant had conferred with Plaintiffs before filing it. *See* Doc. 38.
Plaintiffs did not seek leave to file their sur-reply.  Nonetheless, the Court has reviewed it and
has considered the substantive arguments it contains.

In this insurance action, Plaintiffs assert that Defendant, which issued insurance policies to Plaintiffs from 2019 to 2022, breached its duties by failing to provide them with a defense in three pending lawsuits ("the underlying lawsuits"). Defendant argues that coverage is precluded by an exclusion endorsement. Upon review and full consideration, the Court agrees with Defendant that coverage is precluded and will therefore grant the motion to dismiss.

I.    **Background**[2]

On October 20, 2019, a fire destroyed Building 140 of the Gardens of Forest Lakes Condominiums, leaving the units inside it uninhabitable. Doc. 32 ¶ 25. The owners of those units subsequently filed lawsuits against the condominium association and the members of its board of directors under Florida Statutes § 718.111, alleging that they failed in their duty to repair and reconstruct the building after the fire. *See* Docs. 40-1, 40-2, 40-3.

The first underlying lawsuit was filed by Virginia Rigo in June 2020. Doc. 40-2. She alleged that she has been obligated to continue paying condo association fees and mortgage payments on a unit that was rendered uninhabitable by the fire and

---

[2] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court also considers the insurance policies, which are attached to the Complaint, and the complaints of the underlying lawsuits, which are incorporated into the Complaint by reference. Doc. 32 ¶¶ 26-28; *see*, *e.g.*, *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 143 F.Supp.3d 1283, 1291 (S.D. Fla. 2015) (in insurance action, considering underlying complaints in motion to dismiss pursuant to the incorporation by reference doctrine, in which "the Court may consider extrinsic documents if those documents are central to the plaintiff's claim and their authenticity is not disputed.") (citations omitted).

resulting water damage. *Id.* ¶¶ 3, 5.  She further alleged that the association had the duty and sole ability to repair, reconstruct, or rebuild the damaged building within a reasonable period of time, and to maintain adequate property insurance to do so. *Id.* ¶ 6.  Yet, by the time of her suit, "essentially little, if anything, [had] been done to repair, reconstruct or rebuild" her unit, and the association had failed to inform her or the other owners of its plans to do so. *Id.* ¶¶ 13, 26-27.  Rigo sought to enjoin the association and board members to "repair, reconstruct, rebuild and/or replace and maintain" her unit; she requested the appointment of a receiver to do the same; and she sought unspecified damages. *Id.* ¶¶ 16-27.

The second suit was filed by Jimmy Hart in May 2022. Doc. 40-1.  He alleged that the fire had also rendered his unit uninhabitable, and that the association still had not begun reconstruction of the building and would not provide information on the status. *Id.* ¶¶ 9-10, 13, 17.  In the meantime, he continued to incur association fees, mortgage payments, and alternative living arrangement expenses. *Id.* ¶ 11, 33, 37.  Hart asserted the same causes of action as Rigo, as well as a count alleging that the association was negligent in failing to reconstruct or rebuild the condo building within a reasonable period of time or failing to maintain proper insurance to do the same. *Id.* ¶¶ 24-41.

Outbidya, Inc., filed the third underlying lawsuit in January 2023. Doc. 40-3.  Outbidya alleged that the association failed to "initiate, much less, complete the replacement of" its unit in the three years since the fire. *Id.* ¶ 9.  Outbidya further alleged that the association breached its statutory duties to replace the unit, causing

damages to Outbidya consisting of "the difference in the fair market value of its unit upon replacement, and the current fair market value of the unit in its present condition," and "the continuing loss of use of its unit for those periods of time following a reasonable period of time for Defendant to have replaced of Plaintiff's unit." *Id.* ¶ 10.

Now, in the instant action, the condo association and the members of its board of directors allege that Defendant, their insurer, has breached its contractual duty to defend and indemnify them in the underlying lawsuits. Doc. 32.   Plaintiffs assert that three Condominium Directors, Officers and Employment Practices Liability Insurance policies, spanning from March 2019 to March 2022, provide coverage for the underlying lawsuits. *Id.*  The relevant policy language is the same between the three policies. *See* Docs. 32-1, 32-2, 32-3.  The policies provide coverage for damages that arise out of a claim for wrongful acts that was first made during the policy period, and a defense against claims against the insured seeking such damages. Doc. 32-1 at 64-65.  A "claim" includes a civil suit in which damages are alleged or sought. *Id.* at 77.

Defendant moves to dismiss the Amended Complaint with prejudice. Doc. 36. Defendant argues that coverage of the underlying lawsuits is unambiguously excluded under the policies' "Bodily Injury / Physical Damage Exclusion Endorsement," which modifies the policy exclusions. *Id.*, citing Doc. 32-1 at 83; Doc. 32-2 at 83; Doc. 32-3 at 84.  The policies' Exclusions section explains that "This policy does not provide coverage for any 'claims' arising directly or indirectly from any" of a list of exclusions.

Doc. 32-1 at 66.   The Bodily Injury / Physical Damage Exclusion Endorsement replaces one such exclusion with the following:

(1) bodily injury, sickness, mental anguish, humiliation, emotional distress, disease or death of any person, false arrest or imprisonment, invasion of privacy, assault, or battery, except that this exclusion shall not apply to allegations of emotional distress or mental anguish arising out of a claim for "wrongful employment practices"; or,

(2) damage to or destruction of any tangible property, including the loss of its use, whether or not it is damaged or destroyed.

*Id.* at 83.

Altogether, the relevant portion of the exclusion on which Defendant relies is as follows:

This policy does not provide coverage for any 'claims' arising directly or indirectly from…damage to or destruction of any tangible property, including the loss of its use[.]

*See id.* at 66, 83.   Defendant argues that this exclusion precludes coverage of the underlying lawsuits because they arose from the fire's destruction of Building 140. Doc. 36.

Responding in opposition, Plaintiffs argue that the exclusion endorsement does not bar coverage because the underlying plaintiffs are not suing them for *causing* the property damage. Doc. 37.   Rather than arising from the fire, the suits arise out of Plaintiffs' alleged failure to take appropriate actions to ensure that Building 140 was repaired, reconstructed, and rebuilt within a reasonable period of time. *Id.* at 11.   "As a result," Plaintiffs argue, "the underlying claimants are not suing for damage to tangible property." *Id.*

5

## II.   __Legal Standard__

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   __Discussion__

Under Florida law,[3] insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 877 (Fla. 2007).  "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the

---

[3] In a contract action, a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *See Zodiac Grp., Inc. v. Axis Surplus Ins. Co.*, 542 F. App'x 844, 848 (11th Cir. 2013).

policy as it was written." *Travelers Indemn. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla. 2004). Policy language that is "susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage," will be considered ambiguous; but a provision or term will not be found ambiguous "merely because it is complex and requires analysis" or lacks a definition. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165-166 (Fla. 2003). An insured bears the burden of proving that a claim against it is covered by the insurance policy, while the insurer bears the burden of proving that an exclusion to coverage applies. *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 143 F.Supp.3d 1283, 1293 (S.D. Fla. 2015) (citation omitted).

Here, the parties dispute whether the underlying lawsuits "arise directly or indirectly from…damage to or destruction of any tangible property, including the loss of its use[.]" *See* Doc. 32-1 at 83. Courts have treated the policy phrase "arising from" as synonymous with "arising out of." *See Century Sur. Co. v. Seductions, LLC*, 349 F. App'x 455, 458 (11th Cir. 2009), citing *Church & Tower of Fla., Inc. v. BellSouth Telecomms., Inc.*, 936 So.2d 40, 41 (Fla. 3d DCA 2006). "[T]he 'arising out of' standard is not difficult to meet." *Zucker for Bank United Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1350 (11th Cir. 2017). It is " broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'incident to' or 'having a connection with.'" *Taurus Holdings, Inc. v. U.S. Fidelity and Guar. Co.*, 913 So.2d 528, 532-33 (Fla. 2005), quoting *Hagen v. Aeta Cas. and Sur. Co.*, 675 So.2d 963,

965 (Fla. 5th DCA 1996).  While the phrase "requires some level of causation greater than coincidence," it "does not equate to proximate cause." *Taurus*, 913 So.2d at 533 (citations omitted).

Some courts have found that "arising out of" equates to "but for" causation. *See Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1327-28 (11th Cir. 2005).  In *Chicago Title Ins. Co. v. Northland Ins. Co.*, 31 So.3d 214 (Fla. 4th DCA 2010), for example, the court held that an exclusion for damages arising out of the misappropriation of funds precluded coverage of a lawsuit.  Although the complaint asserted claims related to negligence in addition to the misappropriation of funds, the court found that "[a]ny liability based on negligence stems from and is dependent on the misappropriation of funds by the attorney.  But for the attorney's actions, Chicago Title would have had no obligation to pay damages." *Id.* at 216.

An Eleventh Circuit case interpretating the applicability of a pollution exclusion illustrates the breadth of the phrase "arising out of" under Florida law.  *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270 (11th Cir. 2008), involved a dispute over a policy provision that excluded from coverage "all liability and expense arising out of or related to any form of pollution, whether intentional or otherwise"; the policy would not cover "any damages, claim, or suit arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" *Id.* at 1273.  The underlying lawsuit alleged that the insured was hired to conduct a site assessment of real property to aid a buyer in its purchasing decision. *Id.* at 1272.  One goal of the site assessment was to identify the likely presence of environmental hazards

such as pollutants. *Id.* After the insured determined there were no hazards, the buyer purchased the property. *Id.* The buyer then discovered a significant environmental hazard. *Id.*

The district court found that the buyer's claim fell outside the pollution exclusion, because it related to the insured's failure to carry out professional responsibilities, not pollution, and the insured "in no way *caused* the pollution." *Id.* at 1273, 1276 (emphasis in original). But the Eleventh Circuit reversed. *Id.* at 1277. It found that the damages the buyer sought arose directly out of the discovered pollution. *Id.* at 1275. "Although the alleged conduct was negligence in performing the site assessment, Priority's claim depends upon the existence of the environmental contamination." *Id.* As a result, the claim fell squarely under the pollution exclusion. *Id.*

Here, too, the underlying lawsuits stem from and are dependent on the existence of the property damage caused by the fire; they would not exist but for the fire. *See id.*; *Chicago Title*, 31 So.3d at 216. Plaintiffs' reliance on the fact that they were not alleged to have *caused* the property damage mirrors the argument the Eleventh Circuit rejected in *James River*. This argument rests on an interpretation of the exclusion that is far narrower than Florida law requires, and is better suited to an exclusion for claims "caused by" property damage rather than the broader phrase "arising out of." The underlying lawsuits plainly "grow[] out of, flow[] from…or hav[e] a connection with" property damage. *See Taurus Holdings*, 913 So.2d at 539. Under Florida law, they fall

squarely within the exclusion of claims arising directly or indirectly from property damage.

Moreover, Plaintiffs' attempts to distinguish *Commodore Plaza Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 12-22534-CIV, 2013 WL 150612 (S.D. Fla. Jan. 14, 2013), and *Eastpointe Condo. I Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 379 F. App'x 906 (11th Cir. 2010), are unavailing. Both cases found that coverage of lawsuits against condo associations was precluded under an exclusion for claims arising out of property damage, because the lawsuits arose from damage to condominium property caused by hurricanes. *Id.* The underlying lawsuits in *Commodore Plaza* alleged claims of negligence, breach of contract, and breach of fiduciary duty in connection with the repair of the damaged building after the hurricane, while the underlying suit in *Eastpointe* alleged the same claims based on the association's failure to adequately maintain and repair a building's roof and air conditioning system before, during, and after two hurricanes, resulting in substantial damage. *Commodore Plaza*, 2013 WL 150612 at *1; *Eastpointe*, 379 F. App'x at 907.

Plaintiffs argue that the cases are distinguishable because the underlying lawsuits alleged that the condo associations took actions that caused or contributed to the property damage. Doc. 37 at 12-13. However, the decisions do not rest on that distinction. In *Commodore Plaza*, the court found that all the alleged failures of the insured

> occurred because of the property damage caused by Hurricane Wilma. Had there been no property damage there would not have been a need for repairs, a need to hire qualified workers, a need to

> obtain permits, a need to follow the Florida Building Code and
> zoning ordinances, or a need to timely complete repairs. … [T]he
> rodent and sanitation issues also arose because of the work being
> done to repair the property damage.  Thus, all of the claims…flow
> from, grow out of, and have their origin in the property damage.

*Commodore Plaza*, 2013 WL 150612 at *4.   The court rejected the association's argument that the "basis for" the underlying lawsuit was the alleged statutory violations rather than the reason the repair work had to be done. *Id.*  Thus, it found, because all the underlying claims "arise from the fact that the Bacher townhouse suffered property damage[,…] the very fact that is the basis of the Policy exclusion, property damage, is also the basis from which all of [the] claims arise." *Id.*  In the underlying lawsuits at issue here, too, property damage from the fire is the basis of the claims against Plaintiffs, and it is the reason that the duties that were allegedly breached arose.  As in *Commodore Plaza*, the claims "flow from, grow out of, and have their origin in the property damage." *Id.*

In *Eastpointe*, the Eleventh Circuit also emphasized the breadth of the meanings that the phrase "arising out of" encompasses. 379 F. App'x at 908.  It found that the alleged breach of fiduciary duty "plainly had a connection with the property damage alleged in the [underlying] complaint," because the claim "depended upon the existence of the property damage." *Id.*  It is true that the breach of fiduciary duty at issue in *Eastpointe* was alleged to have caused the property damage, unlike the alleged breaches here.  But the claims against Plaintiffs still "depend upon the existence of the property damage," because they would not exist if the property damage had not

occurred.  Both *Eastpointe* and *Commodore Plaza* support Defendant's argument that the exclusion applies.

It is undisputed that the policies do not provide coverage for any claims arising directly or indirectly from damage to or destruction of tangible property.  Because the underlying lawsuits arise at least indirectly from the destruction of Building 140, coverage is plainly excluded.  Defendant's motion to dismiss is due to be granted.

Moreover, given the deficiencies of the complaint, any amendment would be futile.  *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005); *see also*, *e.g.*, *First Watch Restaurants, Inc. v. Zurich Am. Ins. Co.*, 519 F.Supp.3d 1056, 1062 (M.D. Fla. 2021) (finding that coverage was equivocally excluded and dismissing complaint with prejudice), *aff'd*, No. 21-10671, 2022 WL 1634571 (11th Cir. May 24, 2022).  Nor, in any event, do Plaintiffs request leave to amend.  *See Wagner v. Daewoo Heavy Indust. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (court is not required to grant leave to amend a complaint *sua sponte* to a plaintiff who is represented by counsel and has not requested it to do so).  As such, the dismissal is with prejudice.

Accordingly, it is **ORDERED**:

1. Defendant Aspen Specialty Insurance Company's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 36) is **GRANTED**.

2. The Amended Complaint is **DISMISSED with prejudice**.

3.  The Clerk is directed to terminate any pending motions and deadlines and

    **CLOSE** this case.

    **DONE** and **ORDERED** in Tampa, Florida on December 4, 2024.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties